IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Joey Brandon Mabe, ) | |
| ) | Civil Action No. 6:15-2573-RBH-KFM |
| Plaintiff, ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| Unit Manager F. Berrios, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on the defendant's amended motion to dismiss or, in the alternative, for summary judgment (doc. 40). The plaintiff, a federal prisoner in the Federal Correctional Institution (Medium - II)in Butner, North Carolina ("Butner") who is proceeding *pro se*, seeks relief pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971).[1] Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A) and Local Civil Rule 73.02(B)(2) (D.S.C.), all pretrial matters in this case were referred to the undersigned United States Magistrate Judge for consideration.

On October 7, 2015, the defendants filed a motion to dismiss or, in the alternative, for summary judgment (doc. 26). On November 9, 2015, the plaintiff filed a motion to amend his complaint (doc. 30), limiting his claims to only one of the original defendants and narrowing his allegations (*see* docs. 30, 31). The undersigned granted the motion to amend on April 26, 2016, and gave the remaining defendant, F. Berrios, time to file an amended dispositive motion (doc. 36). On May 10, 2016, defendant Berrios filed an

---

[1] In *Bivens*, the Supreme Court established a cause of action against federal officials for the violation of federal constitutional rights. A *Bivens* claim is analogous to a claim under 42 U.S.C. § 1983. *Harlow v. Fitzgerald*, 457 U.S. 800, 814–20 (1982). Case law involving Section 1983 claims is applicable in *Bivens* actions and vice versa. *Id*. *See also Osabutey v. Welch*, 857 F.2d 220, 221–223 (4th Cir.1988).

amended motion to dismiss or, in the alternative, for summary judgment (doc. 40). On May 11, 2016, a *Roseboro* order (doc. 41) was issued to apprise the plaintiff of the motion to dismiss and summary judgment procedures. *Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975).  The plaintiff filed a response in opposition to the defendant's motion on May 31, 2016 (doc. 46).

## **FACTS PRESENTED**

The plaintiff was housed at FCI Williamsburg from February 28, 2014, to July 10, 2015 (doc. 40-2).  On July 10, 2014, the defendant, who is the Unit Manager for Housing Unit 1, was listening to recorded inmate phone calls on the TRULINCS Inmate Phone System (docs. 37 at 2; 40-3, def. aff. ¶ 4; 40-5). The defendant heard a recorded telephone call from the plaintiff to his mother, Jean Mabe, on June 10, 2014, at approximately 7:36 p.m. (doc. 40-3, def. aff. ¶ 4).  During this telephone call, the plaintiff gave his mother the name of another inmate, James Benson, Reg. No. 51020-056, in order for his mother to send inmate Benson money (*id*.).  The defendant heard the plaintiff's mother state, "I'm not going to put my name and address, I'll put her name and address on it" (*id*.).  On June 12, 2014, at approximately 7:29 p.m., the plaintiff placed another call to his mother (*id*.)  At 42 seconds into the call, the plaintiff's mother stated that she sent inmate Benson $35.00, $15 for the telephone and $20 to buy himself stuff (*id*.)

On July 10, 2014, the defendant issued Incident Report #2604162 to the plaintiff for violations of Inmate Discipline Code 397, Use of Telephone for Abuses Other than Criminal Activity, and Code 328, Giving Money or Anything of Value to, or Accepting Money or Anything of Value From, an Inmate or Any Person without Staff Authorization (*id.*; docs. 37 at 2; 40-5).

On July 14, 2014, the Unit Discipline Committee ("UDC") held a hearing on Incident Report #2604162 to consider whether the plaintiff violated Discipline Codes 397 and 328 (docs. 40-3, def. aff. ¶ 5; 40-5; 40-6).  The plaintiff stated to the UDC that his mother did send inmate Benson money but denied that he told her to send it (doc. 40-5 at 2). The plaintiff admitted that he gave inmate Benson's name and number to his mother

(*id.*)  The UDC found that the plaintiff violated Discipline Codes 397 and 328 as charged "[b]ased on the information received, the inmate statement, the TRULINCS report identifying the inmates [sic] mother and telephone number, the money order receipt and the account showing when money was received" (*id.*).  The UDC sanctioned the plaintiff with loss of telephone privileges for 120 days (*id*; doc. 40-6).  The defendant did not participate in this initial UDC hearing or encourage the UDC to find that the plaintiff violated the Inmate Discipline Codes 397 and 328 (doc. 40-3, def. aff. ¶ 6)

On July 21, 2014, the plaintiff appealed the UDC decision to the Warden at FCI Williamsburg in Remedy #787217-F1[2] (doc. 40-4, L. Meredith aff. ¶ 6; doc. 40-4 at 19). The plaintiff alleged that this sanction was too long and a hardship because he could not talk to his grand*mother* who was dying of breast cancer[3] (*id.*).  On July 29, 2014, former Warden M. Cruz denied this remedy, and on August 7, 2014, the plaintiff appealed the Warden's decision to the Southeast Regional Office ("SERO") in Remedy #787217-R1, noting that he "did not mean to break any rules" (*id*. ¶ 7; doc. 40-4 at 20-21).  On or about August 20, 2014, the SERO remanded the Code 397 and 328 violations back to FCI Williamsburg for a rehearing by the UDC (*id*. ¶ 7; doc. 40-4 at 22).  As the plaintiff's Unit Manager, the defendant assigned the plaintiff's code violations to be reheard by different UDC members from Housing Unit 1 (doc. 40-3, def. aff. ¶ 6).

On September 3, 2014, the UDC conducted the rehearing on the plaintiff's Code 397 and 328 violations (*id.*).  During the rehearing, the plaintiff told the UDC that he "wanted the Incident Report expunged.  End of statement" (doc. 40-5 at 4-5).  The plaintiff did not present any other evidence or witnesses to support his request for the expungement (*id.*).  The UDC again found that he violated Codes 397 and 328 and sanctioned him with

---

[2]The extension "-F1" indicates the filing at the institution or field level.  The extension "-R1" indicates the filing was at the regional level, and the extension "-A1" indicates the filing was at the national level (doc. 40-4, Meredith aff. ¶ 5).

[3] In his amended complaint, the plaintiff stated that his grand*father* was dying at the time of the original sanction of 120 days loss of telephone privileges (doc. 37 at 4).

3

45 days loss of telephone privileges (*id.*).  The defendant did not participate in this UDC hearing or direct the UDC to find that the plaintiff violated the Inmate Discipline Code (*id.*; doc. 40-3, def. aff. ¶ 6).

On September 17, 2014, the plaintiff appealed the September 3, 2014, UDC rehearing on Incident Report #2604162 in Remedy #794363-F1 at FCI Williamsburg (doc. 40-4, Meredith aff. ¶ 8).  It was rejected, and the plaintiff was notified to "submit a copy of the Incident Report you are appealing - to include the UDC hearing information" (*id.*).  The plaintiff submitted Remedy #794363-F2 on the same day (*id.*; doc. 40-4 at 23).  On or about October 6, 2014, Warden Cruz denied Remedy #794363-F2 (*id.* ¶ 8; doc. 40-4 at 24)  On October 21, 2014, the plaintiff filed Remedy #794363-R1 with the SERO, which was rejected on October 22, 2014, due to illegible writing (*id.* ¶ 8).  On or about November 4, 2014, the plaintiff filed Remedy #794363-R2 with the SERO (*id.*; doc. 40-4 at 25).  On November 17, 2014, the SERO remanded the plaintiff's code violations back to the institution for another UDC rehearing in response to Remedy #794363-R2 (*id.* ¶ 8; doc. 40-4 at 26).  The defendant requested the UDC from Housing Unit 3 to conduct the rehearing for the plaintiff's violations (doc. 40-3, def. aff. ¶ 7).

On December 5, 2014, the UDC from Housing Unit 3 conducted another rehearing on the code violations (*id.*; doc. 40-5 at 6).  During this UDC hearing, the plaintiff stated "this has been recommended back twice form [sic] region. My 6th amendment rights has been violated, Due Process.  I'm trying to get this expunged, usually when your rights are violated, that's what happens" (doc. 40-5 at 6)  Again, the plaintiff did not present any other evidence or witnesses to support his request for the expungement.  This UDC found that the plaintiff violated Code 328 and dismissed the charge under Code 397 (*id.*).  The UDC stated:

> The UDC conducted a rehearing of incident report #2604162. The decision of the UDC is based on section 11 of the incident report. Specifically, inmate Mabe placed a call on 6-10-2014 and spoke to someone identified as Jean Mabe and gave Jean another inmate's name and number (Benson, James #51020-056) in order for her to send that inmate (Benson)

4

> money. Inmate Mabe placed another call on 6-12-2014 in which the Jane stated she sent that inmate (Benson 51020-056) $35.00. Giving money to another inmate without staff authorization is a violation of Code 328.

(*Id.*). The UDC concurred with the prior UDC sanction of 45 days loss of telephone, which the plaintiff had already completed (*id.*). The defendant did not participate in the UDC hearing on December 5, 2014, or ask the UDC members to find that the plaintiff violated Code 328 (*id.*; doc. 40-3, def. aff. ¶ 7).

On December 10, 2014, the plaintiff appealed the third UDC rehearing to former Warden Cruz in Remedy #804173-F2 (doc. 40-4, Meredith aff. ¶ 10). He alleged violation of his "Sixth Amendment Due Process rights" and claimed that defendant Berrios "has had a hand in my UDC from the start all 3 times." He further claimed that his Code 328 violation could not exist after his Code 397 violation was dismissed (*id.*; doc. 40-4 at 32). On December 22, 2014, former Warden Cruz responded to Remedy #804173-F2, stating that the plaintiff's code violations would be referred to the DHO (doc. 40-4 at 33). However, the plaintiff did not have any hearings before the DHO on the Code 397 and 328 charges for several reasons (doc. 40-3, def. aff. ¶ 9). First, the plaintiff's code violations were not appropriate for referral to the DHO (doc. 40-7, E. Slater aff. ¶ 6). Pursuant to Program Statement 5270.09,[4] the DHO does not generally hear 300 level offenses, unless the inmate is cited with a Code 331 violation for tobacco or nutritional supplements, the inmate has a "moderate severity level charge for a VCCLEA inmate rated 'violent,'" or "is a PLRA inmate found to have committed two moderate offenses during his/her current anniversary year . . ." (*id.*). Additionally, the plaintiff's citation in Incident Report #2604162 was his first 300 level inmate discipline code violation and, thus, it did not meet the criteria for a referral to the DHO (*id.*). If Warden Cruz had referred the plaintiff's code violations to E. Slater, the DHO for FCI Williamsburg, the DHO would have remanded the code violations back to the UDC level as the plaintiff's offenses did not meet the criteria for a DHO hearing (*id.*).

---

[4]Program Statement 5270.09 is available at BOP.gov. The inmate has access to this Program Statement in the inmate law library.

5

Finally, at the time he filed Remedy #804173-F2, the plaintiff had already received a UDC hearing and two UDC rehearings following his appeals in Remedy #787217 and #794363 (*id.* ¶ 8). According to DHO Slater, the rehearing by the UDC from Housing Unit 3 on December 5, 2014, in which the UDC found that the plaintiff only violated Code 328 and concurred with the sanctions of 45 days loss of telephone privileges, negated the plaintiff's claims of bias by the UDC from Housing Unit 1 (*id.*).

The plaintiff appealed the Warden's decision to the SERO on January 6, 2015, in Remedy #804173-R1 (doc. 40-4, Meredith aff. ¶ 11). On January 7, 2015, the SERO rejected Remedy #804173-R1, stating that the plaintiff failed to provide the proper number of continuation pages with his appeal and he could resubmit his appeal in proper form within ten days of the date of the rejection notice (*id.*; doc. 40-4 at 34). On February 9, 2015, The plaintiff submitted Remedy #804173-R2 to the SERO claiming a violation of his "6th Amendment Due Process right with deliberate intent" (doc. 40-4 at 35-36). He stated that defendant Berrios "has continued to have a say in the disciplinary which is a violation of Due Process. . . " (*id.*). He also asserted that "the Warden's Office sent this to DHO to try to cover up what staff did" (*id.*). On February 27, 2015, the SERO denied Remedy #804173-R2, stating that the plaintiff failed to provide any evidence of the alleged violations of his due process rights during the discipline process (*id.* at 37). The SERO also noted that the UDC outlined the evidence that he committed the prohibited act (*id.*).

On March 17, 2015, the plaintiff submitted Remedy #804173-A1 to the BOP Central Office appealing the December 5, 2014, rehearing on Incident Report #2604162, where the plaintiff was found to have violated Inmate Discipline Code 328. The plaintiff requested expungement of the code violation from his inmate discipline record (*id.* at 38-39; doc. 40-4, Meredith aff. ¶ 12). On March 23, 2016, the Central Office denied this remedy, stating that a review of the "disciplinary proceedings indicates compliance with Program Statement 5270.09, Inmate Discipline Program" (doc. 40-4 at 40). The Central Office further found that there was no evidence the UDC was biased or that he plaintiff's guilt was predisposed (*id.*). Further, the Central Office found that the dismissal of the Code 397

6

offense did not forestall the disposition of the Code 328 offense by the UDC, and the evidence relied upon by the UDC was sufficient to support the finding that the plaintiff committed the Code 328 offense (*id.*).

As noted above, in his amended complaint, the plaintiff names only F. Berrios, Unit Manager at FCI Williamsburg, as defendant (doc. 37). The plaintiff alleges that because his grandfather was dying, he requested more telephone minutes from the defendant, his Unit Manager (*id.* at 4). He claims this motivated the defendant to start monitoring his telephone calls. He alleges that he had no intent to violate the rules as he was just trying to help a fellow inmate whose mother was dying of cancer. The plaintiff alleges that, after he lost his telephone privileges, he tried to reason with the defendant (*id.*). He claims that the fact he was trying to help another inmate was wrongfully excluded from consideration (*id.* at 5). He alleges that the regulations in place are overly broad and leave no discretion in penalties (*id.*). The plaintiff alleges that his due process rights were violated by defendant Berrios (*id.* at 6). He seeks a preliminary and permanent injunction ordering the removal of the incident from his record and compensatory damages in the amount of $5,850.00 for pain and suffering and loss of contact with family (*id.*). In his affidavit submitted with the amended complaint, the plaintiff states that defendant Berrios was motivated to listen to his telephone call "in retaliation for Plaintiff's verbal complaint about not getting the extra minutes necessary to call home about his own grandfather dying," and the defendant had a "personal and very unprofessional and consistent need to sanction plaintiff" (doc. 37-1, pl. aff. ¶¶ 3-4).

## **APPLICABLE LAW AND ANALYSIS**

*Motion to Dismiss*

The defendant first argues that the plaintiff's amended complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction based upon the plaintiff's failure to exhaust his administrative remedies (doc. 40 at 11-12). Specifically, the defendant argues that, despite exhausting Remedy #804173 through all three levels of the administrative remedy process, the plaintiff never presented

the following issues for review: defendant Berrios violated his Fifth Amendment, Fourteenth Amendment and due process rights; "facts surrounding the June 10, 2014, were not presented during the hearing"; the regulations are "overbroad, permitting arbitrary and erroneous abuse of power instead of leaving some discretion"; the defendant should have considered giving him a warning due to the "Moderate Severity Prohibited Act Code Nos. 300-399"; the plaintiff had "no plain, adequate or complete remedy at law to redress the herein"; and the plaintiff has been irreparably injured by the personal attacks/conduct of the defendant (*see* doc. 37).

The undersigned disagrees. Here, the plaintiff in Remedy #804173 generally argued at every step of the administrative remedy process that his due process and other constitutional rights had been violated due to defendant Berrios' alleged involvement in the UDC rehearings (doc. 40-4 at 32, 35-36, 38). While the exact language used by the plaintiff in his amended complaint may not have been used in the plaintiff's administrative remedies, it appears that he alleged the substance of the claims alleged in the amended complaint. Viewing the evidence in a light most favorable to the plaintiff, the undersigned finds that the defendants' motion to dismiss for failure to exhaust administrative remedies should be denied, and the plaintiff's claims should be reviewed on the merits.[5]

*Motion for Summary Judgment*

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248

---

[5]The defendant also moves for dismissal pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted (doc. 40 at 16-23). As matters outside the pleadings have been presented to and not excluded by the court, the undersigned will consider the motion as one for summary judgment under Rule 56. Fed. R. Civ. P. 12(d).

8

(1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

As set forth above, the plaintiff alleges that his due process rights have been violated in several respects. He alleges that "the facts of this issue are excluded from consideration, inasmuch as they could have provided valuable information with respect to the incident in question and may have assisted prison officials in tailoring penalties to fit the actual nature of the reason in support of the Code violation" (doc. 37 at 5). He also asserts that the "regulations in place are overly broad, permitting arbitrary and erroneous abuse of power instead of leaving some level of discretion where not only the necessary consideration of the facts can come in, but the Due Process right to be heard has an opportunity to present itself" (*id.*). The plaintiff claims that the nature of his Code violation was to help another person more than to abuse telephone privileges (*id.*).

Notably, the plaintiff did not lose any earned good-time credits as part of his disciplinary conviction. He lost 45 days of telephone privileges for the violation of Code 328 (doc. 40-5 at 6). Therefore, he was not deprived of a life, liberty, or property interest that would trigger the due process procedures required by *Wolff v. McDonnell*, 418 U.S. 539 (1974). *Sandin v. Conner*, 515 U.S. 472, 483 (1995) (stating that due process is required when the challenged discipline "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" and rejecting inmate's claim that either the Constitution or Hawaii statutes required due process for placement in disciplinary segregation). *See U.S. v. Alkire*, No. 95–7885, 1996 WL 166400, at * 1 (4th Cir. Apr.10, 1996) (no constitutional right to the use of a telephone in prison); *Hadley v. Peters*, No. 94-1267, 1995 WL 675990, at *8 (7th Cir.1995) ("The denial of telephone privileges for ten days is not a matter of constitutional dimension."); *Joyner v. Ozmint*, C.A. No. 3:09-2524-DCN-JRM, 2010 3783167, at *4 (D.S.C. Sept. 22, 2010) (no protected life, liberty, or property interest in using telephone); *May v. Baldwin*, 895 F. Supp. 1398, 1409 (D. Ore.1995) (brief suspension of television and telephone privilege does not amount to constitutional violation).

Furthermore, even if the plaintiff was entitled to the due process procedures explained in *Wolff*, a review of the evidence in this matter demonstrates that the requirements of *Wolff* were observed. In *Wolff*, the Supreme Court held that due process is satisfied in prison disciplinary hearings when the following requirements are met: (1) at least 24 hours advance written notice of the charges; (2) a written statement by the fact-finder as to evidence relied upon in decision; (3) a written statement by the fact-finder as to the reason for disciplinary action taken; (4) an opportunity to call witnesses and present documentary evidence, if institutional safety will not be jeopardized; (5) counsel substitute if the inmate is illiterate or the case is complex; and (6) an impartial hearing tribunal. *Wolff*, 418 U.S. at 563-71. In order to prevail on a deprivation of due process claim based upon an allegedly impartial hearing tribunal, a defendant must show that the decision

maker displayed "a level of bias that made 'fair judgment impossible.'" *Rowsey v. Lee*, 327 F.3d 335, 341 (4th Cir. 2003) (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)).

Here, the plaintiff received advance written notice of the charges on July 11, 2014, more than 24 hours before the first UDC hearing on July 14, 2014. The plaintiff was advised of his right to remain silent and given a copy of the incident report from the investigating Lieutenant. The plaintiff stated that he understood his rights as well as the body of the incident report. He then admitted to the charges prior to the first UDC hearing. The plaintiff was offered the opportunity to present evidence in the form of documents or witnesses and to have the assistance of a staff representative at the UDC hearing and the two rehearings. The plaintiff requested no witnesses at the UDC hearing or rehearings and waived assistance of a staff representative. The plaintiff had two UDC rehearings on September 3, 2014, and December 5, 2014, following his administrative remedy appeals. He also received notice prior to each of the UDC rehearings. The record reflects that the plaintiff appeared at each rehearing and made a statement to the UDC members. The plaintiff failed to present any additional evidence or witnesses at the rehearings. The plaintiff did not receive a DHO hearing as it was not warranted for the Code level 397 and 328 charges. At each rehearing, the UDC members properly advised the plaintiff of the findings against him and his right to appeal the findings through the administrative remedy process, which he utilized. Further, the plaintiff received a written statement of the evidence relied upon and the reason for the disciplinary action taken (doc. 40-5).

Furthermore, due process is satisfied if the disciplinary hearing decision was based upon "some evidence." *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985). "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id*. at 455-56 (citations omitted). "Judicial review of prison disciplinary actions is therefore limited solely to a determination as to whether there is evidence in the record to support the . . . decision."

*Kerr v. Rogers*, C.A. No. 5:16-cv-278-MGL-KDW, 2016 WL 5109544, at * 4 (D.S.C. Sept. 12, 2016), *R&R adopted by* 2016 WL 5076074 (D.S.C. Sept. 20, 2016) (citations omitted).

    The December 5, 2014, UDC found that on June 10, 2014, the plaintiff placed a call to his mother, Jean Mabe, and asked her to send money to inmate Benson and then provided her with inmate Benson's Register Number (doc. 40-5 at 6). On June 12, 2014, the plaintiff spoke with his mother, Jean, again where she confirmed that she sent the money to inmate Benson (*id.*). On March 23, 2016, the BOP Central Office denied the plaintiff's appeal of the December 5, 2014, UDC rehearing in Remedy #804173-A1, stating that the UDC properly considered all the evidence presented at the rehearing, documented the evidence relied upon to support their decision, and imposed a sanction commensurate with the severity level of the prohibited act committed and with policy on the plaintiff's Code 328 violation for Giving Money or Anything of Value to, or Accepting Money or Anything of Value From, an Inmate or Any Person without Staff Authorization . The Central Office found that the plaintiff provided no evidence, nor was any evidence found, that his due process rights were violated during the discipline process (doc. 40-4 at 40).  As there is "some evidence" of his Code 328 violation, due process is satisfied.

    The plaintiff also alleges that the "Moderate Severity Prohibited Act Code Nos. 300-399 surely could have extended enough reasoning for Mr. Berrios to consider a warning without the sanctions, or to place the "sanction on the shelf in order to keep Plaintiff from any further infractions" (doc. 37 at 5-6).   He alleges in his affidavit submitted with the amended complaint that defendant Berrios was motivated to listen to his telephone call "in retaliation for Plaintiff's verbal complaint about not getting the extra minutes necessary to call home about his own grandfather dying," and the defendant had a "personal and very unprofessional and consistent need to sanction plaintiff" (doc. 37-1, pl. aff. ¶¶ 3-4). Program Statement 5270.09, Chapter 4, § 541.7(b), states the following: "The UDC ordinarily consists of two or more staff. UDC members will not be victims, witnesses, investigators, or otherwise significantly involved in the incident." *See* https://www.bop.gov/PublicInfo/execute/policysearch?todo=query&series=5000#. Claims

of retaliation by inmates are generally treated with skepticism because "[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds to prisoner misconduct." *Cochran v. Morris,* 73 F.3d 1310, 1317 (4th Cir.1996); *Adams v. Rice,* 40 F.3d 72, 74 (4th Cir.1994) *cert. denied,* 514 U.S. 1022 (1995). The evidence before the court shows that defendant Berrios had no participation in the UDC hearings or rehearings on the Code 397 and 328 charges against the plaintiff. As the plaintiff's Unit Manager, defendant Berrios only assigned the UDC hearing and rehearings to be heard by different UDC members each time, and he did not have any involvement in imposing the sanction against the plaintiff.

Based upon the foregoing, the defendant is entitled to summary judgment on the plaintiff's claims of violation of his constitutional rights.

The defendant also argues that he is entitled to qualified immunity (doc. 40 at 23-25). The undersigned agrees. Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Thus, qualified immunity is lost if an official violates a constitutional or statutory right of a plaintiff that was clearly established at the time of the alleged violation such that an objectively reasonable official in the official's position would have known of the right. *Id*. To determine whether qualified immunity applies, a district court must determine whether a plaintiff has alleged the deprivation of an actual constitutional right at all and whether the particular right was clearly established at the time of the alleged violation. *See Tolan v. Cotton*, 134 S.Ct. 1861, 1865 (2014) (*per curiam*); and *Wilson v. Layne*, 526 U.S. 603, 609 (1999). "The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). As there has been no deprivation of a constitutional right as addressed above, the defendant is entitled to qualified immunity.

## **CONCLUSION AND RECOMMENDATION**

Now, therefore, based upon the foregoing,

IT IS RECOMMENDED that the defendant's amended motion for summary judgment (doc. 40) be granted. The attention of the parties is directed to the notice on the next page.

IT IS SO RECOMMENDED.

s/Kevin F. McDonald
United States Magistrate Judge

January 26, 2017
Greenville, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 300 East Washington Street
> Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).